**Salissou TOURE, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

**No. 758, Docket 93–2498.**

United States Court of Appeals, Second Circuit.

Submitted March 17, 1994.

Decided May 17, 1994.

Salissou Toure, pro se.

Stephen J. Riegel, Asst. U.S. Atty. for the E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty. for the E.D.N.Y., Robert L. Begleiter, Deborah B. Zwany, Asst. U.S. Attys. for the E.D.N.Y., Brooklyn, NY, of counsel), for defendant-appellee.

Before: MAHONEY, WALKER, and SPROUSE,* Circuit Judges.

PER CURIAM:

Plaintiff-appellant Salissou Toure appeals from a judgment entered July 16, 1993 in the United States District Court for the Eastern District of New York, Eugene H. Nickerson, *Judge*, that dismissed Toure's complaint seeking the return of both $1,150 in United States currency (the "Currency") and personal property that federal agents had seized from him. The property was subsequently

---

* The Honorable James M. Sprouse, United States Circuit Judge for the Fourth Circuit, sitting by designation.

returned in the course of this proceeding, and the court concluded that the Currency had been properly forfeited. On this appeal, Toure argues, as he did in the court below, that the administrative forfeiture was procedurally deficient because the Government provided notice of seizure in English, which Toure, whose native language is French, allegedly was unable to understand completely because of his limited knowledge of English. Toure contends that this notice failed to provide him with due process of law, and accordingly that the district court had jurisdiction to provide relief to him despite the completed administrative forfeiture. We affirm in reliance upon this court's decision in *Soberal–Perez v. Heckler,* 717 F.2d 36, 43–44 (2d Cir.1983) (providing notice in English to Spanish-speaking claimants of social security benefits not violative of due process), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984).

Agents of the Drug Enforcement Agency (the "DEA") arrested Toure at John F. Kennedy International Airport on November 4, 1991 on charges of importing heroin in violation of 21 U.S.C. §§ 952(a) and 960(a)(1). At the time of Toure's arrest, the DEA agents seized items of personal property and the Currency from him. Toure subsequently pled guilty to one count of importing heroin, and was sentenced principally to thirty-three months imprisonment.

The government commenced an administrative forfeiture against the Currency by mailing, via certified mail, return receipt requested, a notice of seizure dated April 27, 1992 (the "Notice") to Toure at the Metropolitan Correctional Center (the "MCC"), where he was being held at that time. The DEA subsequently received the return receipt showing that the Notice had been delivered to Toure at the MCC on May 1, 1992. The DEA also mailed the Notice to Toure's home address in Togo, and published the Notice in *USA Today.* The Notice stated, in English, that the Currency had been seized because it was "used or acquired as a result of a drug related offense," and explained the procedures for contesting the seizure, including the fact that an indigent claimant need not post a bond before challenging a seizure.

Neither Toure nor anyone else filed a timely claim for the Currency; accordingly, the Currency was forfeited to the United States on June 11, 1992 pursuant to 19 U.S.C. § 1609.

On September 22, 1992, Toure commenced this proceeding seeking the return of the personal property and the Currency that had been seized by the DEA Agents when they arrested him, or alternatively damages pursuant to the Federal Tort Claims Act (the "FTCA"). Although Toure originally sought the return of both the Currency and the personal property, Toure subsequently informed the court that the personal property had been returned to him, but the Currency had not. The district court referred the case to Magistrate Judge A. Simon Chrein, who concluded in a report and recommendation that the court had no jurisdiction (1) over the claim for the return of the Currency because the administrative forfeiture was not procedurally deficient, or (2) over the FTCA claim because "there is no proffered evidence of any negligent or wrongful conduct on the part of the [DEA]." The district court adopted the report and recommendation of the magistrate judge and dismissed Toure's complaint.

▪ Toure then appealed to this court, challenging the failure to provide him with notice of the seizure of the Currency in French rather than English, and contending that his limited capability to read and understand English rendered the notice that was provided to him violative of due process. We note that Toure's complaint, seeking a return of seized property after the conclusion of the underlying criminal case, is properly treated as commencing a civil action pursuant to 28 U.S.C. § 1346, rather than as a motion pursuant to Fed.R.Crim.P. Rule 41(e). *See United States v. Giovanelli,* 998 F.2d 116, 118–19 (2d Cir.1993); *Onwubiko v. United States,* 969 F.2d 1392, 1396-97 (2d Cir.1992); *see also* 28 U.S.C. § 1346(a)(2) (vesting original jurisdiction in district courts over various claims against the United States not exceeding $10,000).

▪ Further, although the Currency has been administratively forfeited, the district court (and thus this court on appeal) retained

a limited jurisdiction to review the procedure by which the forfeiture was effected. As we stated in *Onwubiko*:

> [A]n administrative forfeiture removes the *res* from the district court and, therefore, typically marks an end to the court's *in rem* jurisdiction, *see, e.g., United States v. Ten Thousand Dollars ($10,000) in United States Currency*, 860 F.2d 1511, 1513 (9th Cir.1988); nevertheless, an exception to this general rule lies if the property is taken accidentally, fraudulently, or improperly. *Id.* Put another way, if an administrative forfeiture is procedurally deficient, the court has jurisdiction to correct the deficiency.

*Onwubiko*, 969 F.2d at 1398.

■ Thus, we have jurisdiction to determine whether the English-language Notice satisfied the requirements of procedural due process. In *Soberal–Perez*, we held that "[n]otice in the English language to social security claimants residing in the United States is 'reasonably calculated' to apprise individuals of the proceedings." 717 F.2d at 43. We perceive no reason why this principle should not be applied to forfeiture cases. The basis of our decision in *Soberal–Perez* was broadly stated:

> While the fundamental tenets of due process require adequate notice to ensure that all parties have a meaningful opportunity to be heard, *Armstrong v. Manzo*, 380 U.S. [545, 552], 85 S.Ct. [1187, 1191, 14 L.Ed.2d 62 (1965) ], due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. [1743], 1748–49, 6 L.Ed.2d 1230 (1961). Rather, it calls for procedures fitted to the circumstances of particular situations. *Goss v. Lopez*, 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975); *Morrissey v. Brewer*, 408 U.S. [471, 481], 92 S.Ct. [2593, 2600, 33 L.Ed.2d 484 (1972) ]. The basic standard to be applied is one of reasonableness.

*Soberal–Perez*, 717 F.2d at 43.

In determining whether the challenged notice was reasonable, we looked to whether the notice was " 'sufficient to put a reasonable person on notice that the order was important and, if not understood, required translation.' " *Id.* (quoting *Commonwealth v. Olivo*, 369 Mass. 62, 70, 337 N.E.2d 904, 909 (1975)). We concluded that "[a] rule placing the burden of diligence and further inquiry on the part of a non-English-speaking individual served in this country with a notice in English does not violate any principle of due process." *Id.*

We reach the same conclusion in this case. There is no reason to preclude the application of the broadly stated and thoroughly sensible ruling in *Soberal–Perez* to this forfeiture proceeding. Toure attempts to distinguish *Soberal–Perez* on the basis that the plaintiffs in that case were at liberty when they received English-language notices, whereas he was confined and thereby limited in his ability to have the Notice translated. We are unpersuaded. A requirement that the government ascertain, and provide notice in, the "preferred" language of prison inmates or detainees would impose a patently unreasonable burden upon the government and establish a paradoxically favored status in this respect for persons who have engaged in conduct warranting imprisonment or detention.

Finally, although *Soberal–Perez* involved residents of the United States, its rationale is equally applicable to nonresidents such as Toure in their dealings with governmental authorities of the United States or any of its constituent jurisdictions.

The judgment of the district court is affirmed.